

# United States Bankruptcy Court
# for the District of Oregon

Thomas M. Renn, Judge  
Jonni Paulsen, Judicial Assistant  
Andrea Breinholt, Law Clerk

405 East Eighth Avenue, Suite 2600  
Eugene, Oregon 97401

(541) 431-4050  
FAX: (541) 431-4047

**VIA ECF ONLY**

July 31, 2018

Ms. Tara J. Schleicher  
Attorney at Law  
121 SW Morrison St. #600  
Portland, OR  97204

Loren Scott  
Attorney at Law  
2350 Oakmont Way #106  
Eugene, OR  07401

Keith Y. Boyd  
Attorney at Law  
724 S Central Ave. #106  
Medford, OR  07501

    RE:   Ameriflex Engineering LLC; Case No. 17-60837-tmr11

Counsel:

    The Debtor in this case, Ameriflex Engineering LLC, asks that I approve its Disclosure Statement (Doc. #282) and confirm its Chapter 11 Plan (Doc. #281). We held an evidentiary hearing on these proposals over the course of two days. At the conclusion of the hearing, I took the matters under advisement. I have considered the testimony and evidence presented at the hearing, arguments made by counsel, and the pleadings offered in support of the parties' positions. For the reasons outlined below, I will deny confirmation of the proposed Plan.

    11 U.S.C. § 1129 specifies that the plan proponent must satisfy all relevant requirements outlined in subsections (a) and (b) when an impaired class rejects the plan. Failure to meet any one of the requirements is sufficient for the court to deny confirmation. Mr. Zoller, the only objecting creditor in this case, raised several objections to confirmation of Ameriflex's Plan and approval of its Disclosure Statement. At the hearing, counsel for Mr. Zoller discussed several problems with the disclosure statement (§ 1129(a)(2)) and the best interest calculation (§ 1129(a)(7)). Mr. Zoller's primary objection, however, and the emphasis of the discussion at the confirmation hearing pertains to the fair and equitable requirement of § 1129(b).

Absolute Priority Rule

Section 1129(b)(1) provides that, when an impaired class votes to reject a plan, the court shall confirm the plan notwithstanding the rejection "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims" that is impaired and that has rejected the plan. The condition that a plan be fair and equitable with respect to a class of unsecured claims includes the following requirements:

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan *on account of* such junior claim or interest any property[.]

Section 1129(b)(2)(B) (emphasis added). In other words, if the dissenting unsecured class is not paid in full, no junior interest may retain or receive anything under the plan on account of such interest. This is the so-called absolute priority rule.

The Supreme Court states that "a causal relationship between holding the prior claim or interest and receiving or retaining property is what activates the absolute priority rule." *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 451 (1999). In instances where the right to purchase a debtor or its assets is extended exclusively to "old equity holders," that "renders [old equity's] right a property interest extended 'on account of' the old equity position and therefore subject to an unpaid senior creditor class's objection." *Id.* at 456. Whether a plan is fair and equitable and whether it satisfies the absolute priority rule are both factual determinations. *See In re Sunnyslope Hous. Ltd. P'ship*, 859 F.3d 637, 646 (9th Cir. 2017); *In re Bonner Mall P'ship*, 2 F.3d 899, 911 (9th Cir. 1993), *vacatur denied and appeal dismissed as moot*, 513 U.S. 18 (1994).

The relevant facts follow. Ameriflex is owned by Pacific Diamond and Precious Metals, Inc. (PDPM) and Cajon, Inc., each with a 50% member interest. PDPM is also Ameriflex's largest secured creditor. In its Plan Ameriflex proposes to pay creditors from the "private sale of all the Debtor's assets to Ameri-Fab LLC . . . for $1.5 million." DEBTOR'S DISCLOSURE STATEMENT at 3. Ameri-Fab was created by PDPM "for the purpose of purchasing Debtor's Assets." *Id.* at 23. The Purchase Agreement attached as Exhibit 1 provides for Ameri-Fab's purchase of all Debtor's equipment, tools, inventories, supplies, contract rights, intangible and intellectual property, etc. In the section specifying which assets are excluded from the sale (Section 2), it states "None."

"The Plan provides for an estimated payment of 90% to full payment, without interest, of all *unsubordinated* Creditors' Allowed Claims from sale proceeds." DEBTOR'S DISCLOSURE STATEMENT at 3 (emphasis added). Mr. Zoller holds the only subordinated claim. *See* JUDGEMENT SUBORDINATING MICHAEL ZOLLER'S PROOF OF CLAIM PURSUANT TO 11 U.S.C. § 510(B) (Doc. #40; filed 3/12/18). With an unsecured claim of $1,524,202 (POC #8-1), he is

Ameriflex's largest creditor. His claim is the sole claim treated in Class 9, which is to receive a "lump sum distribution equal to the Net Reserve Funds," if any. Ameriflex estimates the lump sum distribution to be between $0 and $125,000 (between 0% and roughly 8% of the total claim). Testimony and evidence presented at the hearing clarified that, if the Plan were confirmed as proposed, all creditors would likely receive payment in full, except Mr. Zoller who is unlikely to receive anything.

Because Mr. Zoller's Class 9 claim will not receive payment in full and he has rejected the Plan, the absolute priority rule requires that no claim or interest that is junior to his claim receive or retain property on account of such claim or interest. Only the equity interests of PDPM and Cajon, Inc. are junior to his claim. The question is whether the exclusive purchasing opportunity extended to PDPM, through Ameri-Fab, is "on account of" PDPM's equity interest and, thus, subject to Mr. Zoller's objection.

Ameriflex argues that the absolute priority rule does not apply to the proposed "sale of assets" and that PDPM is not retaining or obtaining anything on account of its interest. Further, it asserts that "Debtor is being liquidated and the equity interests of Cajon and PDPM are being canceled." MEMORANDUM IN SUPPORT OF CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN at 11 (Doc. #331). These arguments are not convincing. As noted above, PDPM created Ameri-Fab expressly for the purpose of acquiring all Debtor's assets. Phillip Cam owns and controls PDPM and, by extension, Ameri-Fab. He is also the President and CEO of Ameriflex and is the individual designated to fulfill the duties of the debtor under §§ 343 and 521 (Doc. #13). Through Mr. Cam's and PDPM's control of Ameriflex, PDPM created for itself this exclusive purchasing opportunity.

Notwithstanding the "sale of assets" and "liquidation" terminology used by Debtor, the sale is, in actuality, a sale of Ameriflex as a going-concern. No assets are excluded from the sale. Ameri-Fab "plans to continue business operations post-closing in a manner consistent with past practices, [and] to preserve its existing business relationships with employees, customers, suppliers, dealers and vendors." DEBTOR'S DISCLOSURE STATEMENT at 27. It "intends to re-employ existing employees and retain all existing employee benefit plans." *Id.* It also intends to lease the same facility, rented from an entity owned by Mr. Cam. *Id.* at 23. At the end of the day, PDPM will own and operate the reorganized debtor just as it has done, except under a new name.

While this is not necessarily an inappropriate outcome, the critical flaw in Debtor's Plan is that it does not permit a sale to any individual or entity other than PDPM (indirectly through Ameri-Fab). As noted in *LaSalle*:

> [T]his just begs the question why the opportunity should be exclusive to the old equity holders. If the price to be paid for the equity interest is the best obtainable, old equity does not need the protection of exclusiveness (unless to trump an equal offer from someone else); if it is not the best, there is no apparent reason for giving old equity a bargain. There is no reason, that is, unless the very purpose of the whole transaction is, at least in part, to do old

> equity a favor. And that, of course, is to say that old equity would obtain its opportunity, and the resulting benefit, *because of* old equity's prior interest within the meaning of [the absolute priority rule].

*LaSalle,* 526 U.S. at 456 (emphasis added). It is "because of" – and on account of – PDPM's control of Ameriflex and its control of the process whereby it alone can acquire all of Debtor's assets that places the proposal squarely within prohibition of the absolute priority rule.

New Value

Ameriflex next argues that PDPM will not obtain an interest in Ameriflex or its assets on account of its former equity interest but, rather, on account of the new value provided as part of the purchase. It points to PDPM's release of roughly $755,500 in secured debt, Ameri-Fab's assumption and payment of most of Ameriflex's debt (but not Mr. Zoller's claim), and its payment of approximately $460,000 in cash to complete the purchase.

In analyzing and applying the absolute priority rule, courts have indeed carved out a "new value" exception (or corollary), which, if met, allows interest holders to retain or receive property under the plan even when unsecured creditors are not paid in full. *Bonner Mall,* 2 F.3d at 908-09. "Such a plan, they reason, will *not* give old equity property '*on account of*' prior interests, but instead will allow the former owners to participate in the reorganized debtor *on account of* a substantial, necessary and fair new value contribution." *Id.* at 909 (emphases in original). Although the Supreme Court was given the opportunity to overrule the new value corollary, it declined to do so in *LaSalle.* 526 U.S. at 443. To satisfy the new value exception, former equity owners must offer value that is "(1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the value or interest received." *Bonner Mall,* 2 F.3d at 908. If the new value exception is met, it would allow the plan proponent to "cram down" a dissenting class of unsecured creditors despite old equity retaining an interest in the reorganized debtor. *In re Tucker,* 2011 WL 5926757, at *2 (Bankr. D. Or. Nov. 28, 2011).

Although the debt assumption and cash payments offered by PDPM for Ameriflex appear to go a long way toward satisfying the five new value elements outlined in *Bonner Mall,* the Supreme Court added gloss to the analysis. In *LaSalle,* the Court stated that, "assuming a new value corollary, [] plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of [the absolute priority rule]." 526 U.S. at 458. The amount of new value must be tested against the market by giving other parties an opportunity to propose competing plans or to submit competing bids. *Id.* at 457-58.

Ameriflex concedes that its Plan does not allow for competing bids. Regarding competing plans, it argues that it satisfies *LaSalle* because the exclusivity period for plan filing expired on April 30, 2018, thereby opening the door for competing plans. *See* ORDER GRANTING DEBTOR'S MOTION TO FURTHER EXTEND (Doc. #272; filed 4/11/18). Mr. Zoller did

in fact file a competing plan and accompanying disclosure statement on June 6, 2018 (Doc. ##312 and 313, respectively), which proposes "to sell all of the assets of the Debtor to a new company called ZC Marine, LLC," owned all or in part by Mr. Zoller, for $3 million. CREDITOR'S DISCLOSURE STATEMENT DATED JUNE 6, 2018 at 6. Debtor, however, overlooks paragraph 3 of the April 11, 2018, Order, which states "[t]he deadline for Debtor to exclusively obtain confirmation of the plan pursuant to 11 U.S.C. § 1129(e) is extended until June 29, 2018." This Order is one of several reflecting what has been, thus far, the law of the case: to give Ameriflex the exclusive opportunity to confirm a plan. Consistent with the Order and the subsequent Order Extending Section 1129(e) Deadline for Court to Confirm Plan (Doc. #334) to July 31, 2018, I have taken no action on Mr. Zoller's plan or disclosure statement.

Ameriflex's argument that it is sufficient that another party be able *file* a plan, if not circulate or confirm it, misses the point of *LaSalle*: that the value and, by extension, purchase price must be determined through exposure to the market. 526 U.S. at 457. No "market" exists inside a vacuum in which only Ameriflex's Plan can be considered. Mr. Cam, as owner and operator of PDPM, Ameriflex, and Ameri-Fab, controls all parties to the proposed sale and has set the price that one will pay to the other. This is precisely the type of situation that *LaSalle* and its progeny direct us to avoid. "Competition is essential whenever a plan of reorganization leaves an objecting creditor unpaid yet distributes an equity interest to an insider." *In re Castleton Plaza, LP*, 707 F.3d 821, 821-22 (7th Cir. 2013) (ruling that a plan giving debtor's principal's wife 100% of the equity in reorganized debtor was subject to competitive bidding). In discussing termination of exclusivity in the context of a debtor's proposed new value plan, the court in *In re Situation Mgmt. Sys., Inc.*, states:

> [W]here as here, there is a party interested in acquiring the Debtor, the opportunity to offer a competing plan is a preferable procedural mechanism . . . Because an approved disclosure statement is a prerequisite to the circulation of a plan and the solicitation of votes, creditors will be able to choose which plan they prefer after having been provided with adequate information sufficient for a 'hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.'

252 B.R. 859, 865 (Bankr D. Md. 2000) (citing § 1125(a)(1)). Upon termination of exclusivity and the filing of competing plans, "[i]t will ultimately be up to the creditors to vote on the best reorganization plan, subject to confirmation by the Bankruptcy Court." *H.G. Roebuck & Son, Inc. v. Alter Commc'n, Inc.*, No. RDB-11-0157, 2011 WL 2261483, at *9 (D. Md. June 3, 2011).

For the reasons outlined above, I find that the absolute priority rule applies in this case and that Ameriflex's Plan giving PDPM (through Ameri-Fab) the exclusive opportunity to purchase its assets violates the rule. I also find that the Plan falls short of the requirements under *LaSalle* for satisfaction of the new value corollary. Debtor's failure to satisfy § 1129(b) provides a sufficient basis for me to deny confirmation. As such, I need not make findings or determinations as to the other objections to confirmation raised by Mr. Zoller or whether to approve the Disclosure Statement.

Ms. Schleicher, Messrs. Boyd & Scott
July 31, 2018
Page 6

    With the expiration of Ameriflex's exclusivity period and denial of confirmation of its Plan, interested parties are now free to file competing plans. If Ameriflex or Mr. Zoller wish to file an amended plan or, in the alternative, pursue confirmation of a previously-filed plan, they have until September 14, 2018, to file the amended plan or a motion to take other action. Depending on how the parties wish to proceed, I may schedule a status conference to discuss procedure.

    The above represents my findings and conclusions under Fed. R. Bankr. P. 7052. The Court will prepare its own order.

Very truly yours,

THOMAS M. RENN<br>
Bankruptcy Judge

TMR:jrp

cc:   Mr. Bradley S. Copeland (Via ECF only)
       Ms. P. Rebecca Kamitsuka (Via ECF only)