Below is an opinion of the court.

_____
THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re:<br><br>AMERIFLEX ENGINEERING LLC<br><br>Debtor. | Case No. 17-60837-tmr11<br><br>MEMORANDUM OPINION ON MOTION TO AMEND ORDER DISALLOWING CLAIM[1] |
|---|---|

Pacific Diamond and Precious Metals, Inc., filed a Motion to Set Aside and to Alter or Amend Order Disallowing Claim, for Additional Findings, and for Reconsideration (Doc. #858). Specifically, PDPM asks that I reconsider the Order Disallowing Claim #25 (Doc. #851), which is based on the findings and conclusions outlined in the Letter Opinion filed September 21, 2020 (Doc. #850). The reorganized debtor, Ameriflex Engineering, LLC, filed a response to the motion (Doc. #860). Having reviewed the parties' filings, conducted my own research, and considered counsels' arguments at the hearing held for that purpose, this memorandum opinion constitutes my ruling on the issues.

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

Page 1 of 15 –  MEMORANDUM OPINION ON MOTION TO AMEND ORDER
                 DISALLOWING CLAIM

**Motion to Alter or Amend Pleadings**

The parties agree on the applicable standards for motions brought pursuant to FRBP[2] 3008, 7052, 9023, and 9024, along with the associated Federal Rules of Civil Procedure. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the [] court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original) (internal citations omitted).

After a court disallows a proof of claim, 11 U.S.C. § 502(j) provides that the claim may be reconsidered for cause "according to the equities of the case." *See also* FRBP 3008 (party may move for reconsideration of an order disallowing a claim). PDPM also moves to alter or amend the order under FRCP 59, made applicable in bankruptcy by FRBP 9023. Courts have held that reconsideration determinations are governed by FRBP 9023 if filed prior to appeal deadline. *See Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 227 n.5 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996) (unpublished).

The reconsideration motion also requests new or additional findings under FRBP 7052 and FRCP 52, applied in bankruptcy contested matters through FRBP 9014(c). Such a motion may be used "to clarify essential findings or conclusions, correct errors of law or fact, or to present newly discovered evidence." 10 Collier on Bankruptcy ¶ 7052.03 (16th ed. 2015). *See*

---

[2] "FRBP" refers to the Federal Rules of Bankruptcy Procedure. The Federal Rules of Civil Procedure are cited as "FRCP."

*also Sumner v. San Diego Urban League, Inc.*, 681 F.2d 1140, 1143 (9th Cir. 1982) (make explicit findings to give appellate court a clear understanding of its ruling).

A party may not use a motion to amend as a vehicle "to present a new legal theory for the first time"; "to raise legal arguments which could have been raised in connection with the original motion"; or "to rehash the same arguments presented the first time or simply to express the opinion that the court was wrong." *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 103 (9th Cir. BAP 2006), *aff'd and remanded*, 277 Fed. App'x 718 (9th Cir. 2008). "The standard for granting a motion to reconsider is strict in order to preclude repetitive arguments that have already been fully considered by the court." *In re JSJF Corp.*, 344 B.R. at 103.

In addition, PDPM moves pursuant to FRCP 60(b) and FRBP 9024 to set aside the order based on new evidence. Motions under Rule 60 are generally filed after the appeal period has expired, which is not the case here. *See United Student Funds, Inc., v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (9th Cir. BAP 2006) (not permitted to revisit the merits).

**Alternative Claims for Recovery**

At the end of a lengthy claim objection process and a trial extended over three days, the court requested briefing on a list of specific issues that arose during the trial. *See* Summary of Proceedings & Minute Order filed 3/2/20 (Doc. #806). The order limited briefing to "the parameters discussed at the hearing." The parameters did not include any new claims or issues related to an amendment to the proof of claim at issue.

In its supplemental briefing, PDPM raised for the first time "alternate bases for recovery" of amounts asserted, including money had and received, restitution, and unjust enrichment.

These alternate bases were not asserted in PDPM's original proof of claim (#25-1) or the amended version (#25-2) filed after the trial.

Presumably, although it filed no motion to do so, PDPM seeks a post-trial motion to amend the pleadings to conform to the evidence purportedly submitted at trial. In bankruptcy adversary proceedings, FRBP 7015 applies FRCP 15 allowing amendment of the pleadings to conform to the evidence. FRBP 7015, however, does not apply in contested matters absent court direction. FRBP 9014(c). PDPM made no request for application of that rule in this case.

Really, here we're talking about Proof of Claim 25, the claim asserted by PDPM and disputed in the lengthy trial held. So, I must determine whether, after conclusion of a trial on a disputed proof of claim, the claimant can amend the claim to include these additional state law claims described as "alternate bases for recovery."

The Ninth Circuit has described a "liberal policy" permitting amendments to timely filed proofs of claims. *See Roberts Farms, Inc., v. Bultman (In re Roberts Farms, Inc.)*, 980 F.2d 1248, 1251 (9th Cir. 1992). The "crucial question" focuses on whether the amendment "unduly prejudice[s]" the opposing party. *See Venhaus v. Wilson (In re Wilson)*, 96 B.R. 257, 262 (9th Cir. BAP 1988) (left to discretion of bankruptcy judge). Factors to review include "bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change in debtor's position." *Id.*

In this chapter 11 case, originally filed on March 22, 2017, the court set the claims bar date as July 17, 2017. Debtor (under former management) originally listed PDPM in its Schedule D with a secured claim that was not disputed, contingent, or unliquidated. The court confirmed the plan of reorganization by order entered December 14, 2018 (Doc. #529). As the reorganized debtor, Ameriflex (under new management) filed its objection to the original

scheduled claim of PDPM on January 4, 2019 (Doc. #540).  PDPM filed Proof of Claim #25-1 on January 11, 2019, and it filed its Amended Proof of Claim #25-2 on May 7, 2020.  The parties conducted discovery, filed pretrial motions, and asserted various disputes over the claim through the evidentiary hearing held on February 25-27, 2020.

As I indicated in my Letter Opinion (Doc. #850), page 9, these equitable claims exceeded the scope of the claims tried by the parties and the scope of the briefing parameters allowed at the end of the trial.  PDPM did not file a motion seeking to amend its claim or the scope of the issues tried.  The time for asserting the new claims had long passed, and the completion of the trial, the timing of the plan confirmation, the new owners' post-bankruptcy business operations, and the time devoted to the trial preparation and litigation without knowing about these equitable claims all support my prior ruling.  Ameriflex/BlueEarth would be unduly prejudiced by the insertion of these new claims, and I deny PDPM's attempts to add them after the completion of the trial.

In the Letter Opinion, I also held that these new claims are the types of claims that require an adversary proceeding.  *See* FRBP 7001.  The surprise addition of posttrial claims and opposing parties' rights to know what claim is being asserted is exactly the reason for these protections.  PDPM points to my comments made earlier in the pretrial stage of the litigation about the formalities of an adversary proceeding.  Those comments are entirely consistent with my ruling after the trial and in response to this motion.  PDPM asserted a significant claim in the case.  Ameriflex opposed the claim as asserted.  If PDPM intended to shift to a new theory or add equitable claims, Ameriflex/BlueEarth needed to know that prior to the trial.

PDPM argues that neither the Bankruptcy Code nor the applicable rules require it to bring an adversary proceeding to pursue its alternative claims of money had and received, unjust

enrichment, and restitution. "A matter qualifies as an 'adversary proceeding,' as opposed to a 'contested matter,' if it is included in the list given in Bankruptcy Rule 7001." *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189 (9th Cir. 2011). FRBP 7001(1) requires a would-be claimant to bring an adversary proceeding "to recover money or property[.]"

Similarly, "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding. FRBP 7001(7). "[O]ther equitable relief" applies to a wide variety of equitable claims, including those for constructive trust, marshaling, and backpay under various federal statutes. *See, e.g., In re Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994) (where creditor's claim against the estate "was one seeking an equitable interest in property, such as a constructive trust, rather than a general unsecured claim, it was incumbent on him to file an adversary proceeding in the bankruptcy court").

In *In re Lakhany*, the Ninth Circuit BAP outlined:

> It is error to circumvent the requirement of an adversary proceeding by using a 'contested matter' motion under Federal Rule of Bankruptcy Procedure 9014. Such an error may nevertheless be harmless when the record of the procedurally incorrect 'contested matter' is developed to a sufficient degree that the record of the adversary proceeding likely would not have been materially different. In such circumstances, the error does not affect the substantial rights of the parties and is not inconsistent with substantial justice.
>
> In determining whether it was harmless error to forgo an adversary proceeding, we may appropriately consider whether the material facts are few and disputed, whether the critical questions are pure questions of law, and whether the factual record or the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding.

538 B.R. 555, 561-62 (9th Cir. BAP 2015) (internal citations omitted). Although this harmless error analysis is typically conducted by an appellate court, it highlights the importance of the

procedural safeguards within adversary proceedings and provides guidance for resolution of the pending motion for reconsideration.

PDPM brought each of the alternative claims in order "to recover money or property," within the scope of FRBP 7001(1), and to "obtain . . . equitable relief" within the meaning of FRBP 7001(7). That includes the claim for money had and received. *Comcast of Oregon II, Inc. v. City of Eugene*, 346 Or. 238, 254 (2009) (although claims for money had and received are "quasi-contract," they "are grounded on the equitable principle that one who has been unjustly enriched at the expense of another must make restitution"). As such, PDPM must assert them in the context of an adversary proceeding. My analysis and conclusion to that effect in the Letter Opinion was not clear error under Rule 59(e). The law on this issue is settled, and there is no new evidence that would warrant a different conclusion.

While PDPM could have also listed the alternative claims in its proof of claim, doing so would not change the outcome or suddenly transform the alternative claims into a noncontingent right to recovery from Ameriflex on those bases. Unlike a contract evidencing a creditor's right to payment without further judicial involvement, PDPM's right (if any) to recover on the alternative claims requires an appropriate judgment resulting from formalized litigation. And in those instances, Rule 7001 governs which proceeding is required. I acknowledge that courts have held that the filing of an adversary complaint can be waived if the protections of an adversary proceeding are followed. *See Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (9th Cir. BAP 2002) (error was harmless).

Additionally, all three of the *Lakhany* factors weigh against PDPM's argument that it can circumvent the adversary proceeding requirement to pursue the alternative claims in the context of this contested matter. Starting with the question of whether the material facts are few and

undisputed, the material facts necessary to establish the amount allegedly owed to PDPM were many and highly disputed. Several expert witnesses testified about this issue alone. The exhibits were voluminous and illustrated inconsistent and/or inadequate accounting practices, thus undermining the accuracy of the QuickBooks records. Further, the testimony of the two primary witnesses, Phillip Cam and Michael Zoller, differed on numerous points, with both parties alleging perjury and fraud on the part of the other.

As to whether the critical questions are pure questions of law, the alternative claims all turn on whether the claimant can establish that the defendant acted wrongfully or unjustly in obtaining or retaining the funds at issue. *See Tupper v. Roan*, 349 Or. 211, 223 (2010) ("our unjust enrichment cases speak of a range of circumstances that could be deemed wrongful, including mistake, fraud, coercion, undue influence. . ..."); *Comcast of Oregon*, 346 Or. at 254 (a claim for money had and received may be "maintained whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other."). These are factual questions. Therefore, analyzing the extent of any "wrongfulness" or injustice on the part of Ameriflex in obtaining or retaining the money it received from PDPM would necessarily be a question of fact.

Finally, and perhaps most notable for our purposes, PDPM did not assert the alternative claims in a manner consistent with the procedural safeguards inherent in adversary proceedings. Rather, it raised them in a *post*-trial supplemental memo that I authorized only for issues related to the pending claim objection. *See* ROP referencing specific parameters for briefing (Doc. #806). PDPM's presentation of the alternative claims in the post-trial memo falls short of the FRBP 7008 pleading requirement regarding an allegation of jurisdiction. There's also a question of whether PDPM's factual allegations would satisfy the pleading requirements under ORCP

Page 8 of 15 –   MEMORANDUM OPINION ON MOTION TO AMEND ORDER
                           DISALLOWING CLAIM

Case 17-60837-tmr11    Doc 893    Filed 03/31/21

18A and applicable Oregon caselaw. Although the Minute Order (Doc. #806) permitted Ameriflex to file a further response within 14 days, this does not satisfy the 30-day answer and response period provided under FRBP 7012(a). With the trial completed, there obviously was no opportunity for Ameriflex to conduct discovery regarding the equitable issues underlying the alternative claims.

Moreover, although PDPM argues that the facts presented at trial support the alternative claims, Ameriflex had no reason to develop its case at trial in response to the alternative claims. Instead, consistent with the scope of its claim objection and pre-trial memorandum, Ameriflex focused primarily on the issue of whether Ameriflex authorized or ratified the loan to PDPM. It is not difficult to envision how Ameriflex might have developed the factual record or presented arguments in a materially different way had PDPM timely raised the alternative claims. Indeed, Ameriflex's Response (Doc. #860) to PDPM's Motion to Set Aside outlines its argument that the alternative claims may be time-barred pursuant to 11 U.S.C. § 502(b)(9). Whether or not that is true, that is the type of issue that presumably would have been addressed in a properly brought adversary proceeding. Thus, for these reasons, I conclude that there was no error in ruling that PDPM must assert the alternative claims in an adversary proceeding rather than in this contested matter. To proceed in the manner proposed by PDPM would be inconsistent with substantial justice.

PDPM's arguments regarding FRBP 3007(b) do not change the analysis. By its terms, FRBP 3007(b) applies only in instances where a party in interest objects to the allowance of a claim but seeks additional relief "of a kind specified in Rule 7001." Where Ameriflex is the objecting party, the Rule does not apply to PDPM's alternative claims. The Rule does, however, highlight the consistent requirement that a Rule 7001 claim must be brought in an adversary

proceeding. As PDPM acknowledges, "a contested matter initiated by the filing of an objection to a proof of claim and an adversary proceeding are distinct bankruptcy proceedings, and that certain demands for relief cannot be brought in a contested matter." *Davenport v. Djourabchi*, 316 F.Supp.3d 58, 66 (D. D.C. 2018) (discussing the interplay between Rules 3007(b) and 7001). Where Congress took care to ensure that an objecting party could not append a Rule 7001 claim to its claim objection, there's no basis to conclude that the responding party could, nevertheless, assert its Rule 7001 claims within the context of the claim objection proceeding.

PDPM next argues that it should have an opportunity to raise the alternative claims because, "[a]s Debtor threw more and more arguments into the mix, PDPM had to advance theories in the event the documents on which its claim was based were held invalid." The alternative claims, however, are not "theories" or defenses to Ameriflex's arguments. They are causes of action that PDPM could have brought independent of Ameriflex's claim objection or arguments related thereto. The fact that Ameriflex may have raised additional arguments or claims in its pretrial memo does not render Rule 7001 inapplicable to the alternative claims. In fact, in the Letter Opinion, I determined on page 11 that, "[i]f Ameriflex wishes to obtain a judgment on its claims regarding the fisheries grant money or the alleged excessive payments, etc., to PDPM, it must assert the claims in an adversary proceeding." The only other "new" argument raised by Ameriflex – namely, that PDPM's attorney's fees and costs could not be included in the claim, even if allowed – is unrelated to the alternative claims. I authorized supplemental briefing on the attorney fee issue, which PDPM provided. But that did not open the door for PDPM to sidestep FRBP 7001 and raise new causes of action.

/ / / / / /

/ / / / / /

**Additional Findings Regarding Agreed Fact**

PDPM requests that I reconsider, as it puts it, my decision "to not consider a stipulated fact supported by both parties' expert witnesses and the evidence at trial." More specifically, it asks for reconsideration of, or additional findings related to, Stipulated Fact #24 (Doc. #796), which corresponds with the $681,936 total figure on Exhibit 17, a QuickBooks transaction report for account 2821 "PDPM Credit Line."

PDPM appears to overlook the analysis on page 9 of the Letter Opinion, in which I outline the problems inherent with the total on Exhibit 17. I considered Stipulated Fact #24, but analyzed its significance and accuracy in light of other evidence admitted at trial, including the testimony of Ms. Gleitsman and Ms. Whitfield, as well as Exhibits 20, 21, and 22. Exhibits 20, 21, and 22 all pertain to account 1503 (designated "P CAM DUE/(OWED)") and track transactions going back to January 2011, thus predating the disputed loan from PDPM. PDPM erroneously asserts that "[n]o witness stated that the amounts in account 1503 were due to Phil Cam and not PDPM." In fact, Ms. Whitfield described account 1503 as pertaining to money owed by or to Mr. Cam personally. Trial Day 2-26-20 Tr. p. 35, Lines 20-25 (Doc. #862) (regarding Exhibit 20 and account 1503, "if we owe Phil money or if Phil owes us money, this is where you post it to"). In discussing accounts 1503 and 2821, PDPM's expert witness, Ms. Gleitsman, made no distinction between money owed to Mr. Cam and money owed to PDPM, referring to both accounts as money owed to Mr. Cam. *See* Trial Day 2-25-20 Tr. p. 185, Lines 8-25 (Doc. #861) (discussing the scope of her review of "accounts 1503 and 2821, which were the short term and the long-term loans due to Mr. Cam"). In fact, in response to the question of what she concluded was the amount owed to PDPM as of the petition date, she responded that

the company owed "Mr. Cam" $681,936 on that date. Trial Day 2-25-20 Tr. p. 186, Lines 9-25 (Doc. #861).

PDPM's failure to distinguish between moneys owed to Mr. Cam and to PDPM goes to the very heart of the issue. The parties agree that the $470,012.02 balance in account 1503 was transferred to account 2821 on December 1, 2014 (see Exhibits 17 and 22). As such, the evidence and testimony support the conclusion that PDPM seeks to include the $470,012.02 balance from Mr. Cam's 1503 account in its claim against Ameriflex. While the numbers do, in fact, add up to the $681,936 total on Exhibit 17 and in Stipulated Fact #24, PDPM failed to establish any right to assert a claim on behalf of Mr. Cam, as I noted in the Letter Opinion.

By insisting that Stipulated Fact #24 serves as a concession by Ameriflex that PDPM is entitled to an allowed claim of $681,936, PDPM oversimplifies the analysis and overplays the extent of the stipulation. Ameriflex has consistently disputed that the QuickBooks records support PDPM's asserted claim. *See, e.g.*, Trial Memorandum of Ameriflex Engineering at 10 (Doc. #798; filed 2/5/20) ("[T]he records of Ameriflex are not complete and do not reveal sufficient information to determine any amounts that may be due to PDPM. . .. Portions of the amounts claimed due originated from purported loans to Ameriflex by Phillip Cam, PDPM, Pacific Diamond, and Pacific Diamond Jewelers. None of the records of these purported loans are complete, and therefore, cannot be verified."). In its closing argument, Ameriflex outlined that it "does not take the position that PDPM did not put any money into the debtor. The experts agreed money went in. The issue is how is it to be characterized." Trial Day 6-4-20 Tr. p. 31, Lines 16-19 (Doc. #863) (closing argument by Mr. Boyd). Ameriflex further argued, rhetorically, "[i]f you look at Exhibit 17, there are 30, 40 entries in there. Which one of those is the loan? Which five of those make up the loan? Do all 30 or 40 of them make up the loan?"

*Id.* at p. 30, Lines 20-23 (Doc. #863). In light of Ameriflex's numerous, clear arguments regarding the significance or relevance of the $681,936 figure on Exhibit 17, I will not, as PDPM requests, ignore those arguments and the evidence in favor of a myopic reading of Stipulated Fact #24, which is too brief and vague to carry much weight anyway. As such, I stand by my treatment of Stipulated Fact #24 as outlined in the Letter Opinion and explained in this ruling.

**New Evidence – Fraud on the Court**

PDPM now offers a transcript of testimony by Mr. Zoller from his 2010 dissolution proceeding as evidence of fraud on this court. PDPM identifies three "conflicts" between his 2010 testimony and the testimony he offered at the hearing in this case regarding: (1) income and financing in 2009 for RiverHawk Boats; (2) Ameriflex's ability to obtain financing and its receipt of $450,000 in Fisheries grant money; and (3) Mr. Zoller's interest (or lack thereof) in a 2007 Cadillac Escalade. None of these issues at trial were relevant or material to my ruling on the claim objection. PDPM instead offers the transcript as evidence of Mr. Zoller's credibility.

But as Ameriflex points out, the case cited by PDPM does not support its argument. "[P]erjury by a party or witness, by itself, is not normally fraud on the court." *Levander v. Prober (In re Levander)*, 180 F.3d 1114, 1119 (9th Cir. 1999). "[S]ince perjury is an evil that could and should be exposed at trial, it should not qualify as fraud upon the court." *Id.* at 1120 (citing *Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2nd Cir. 1988)). The Ninth Circuit specifically rejected the argument that perjury constitutes fraud on the court where the issue of the witness's credibility was already before the court and the opposing party could have introduced evidence at trial to impeach the disputed testimony. *Id.* at 1120.

As an initial matter, it is not clear that the alleged conflicting statements are, in fact, inconsistent. For example, regarding the issue of 2009 income and financing for RiverHawk

Boats, the section of Exhibit A to which PDPM cites (Exhibit A, p. 11 of 61, Line 25, through p. 12 of 61, Lines 1-9, of PDPM Motion (Doc. #858)) pertains to income and expenses. The question and answer are perhaps most reasonably understood to treat "income" as "revenue." More specifically, in response to the question of there being "no income and very little expense" for the business, Mr. Zoller responded "That's correct. The business just sat idle," and did not produce or sell boats at that time (Exhibit A, p. 11, Lines 3-8, of PDPM Motion (Doc. #858)). Although revenue and grant money might both constitute "income" for tax purposes, a witness's failure to mention one when seemingly asked about the other does not, without more, give rise to perjury. The other asserted inconsistencies have similar problems, as pointed out by Ameriflex, and do not show anything close to false testimony in this case.

But more importantly, Mr. Zoller's credibility was already an issue before the court. PDPM could have, but did not, introduce the transcript of Mr. Zoller's 2010 testimony at trial. Had it done so, counsel, through further questioning, could have explored the alleged inconsistent statements and clearly established or rebutted the claim for perjury. But the time for that analysis has passed. "[A]n aggrieved party seeking relief under the saving clause of Rule 60(b) still must be able to show that there was 'no opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'" *Gleason*, 860 F.2d at 560 (citations omitted). For these reasons, PDPM has not established that it is entitled to have the Order Disallowing Claim set aside under Rule 60(b). Nor may it proceed under Rule 59(e) to present evidence that it could have introduced earlier in the litigation. *See Kona Enterprises*, 229 F.3d at 890.

/ / / / / /

/ / / / / /

**Conclusion**

After extensive litigation, a lengthy trial, both pre- and post-trial briefing, and a detailed written ruling, PDPM moves on several grounds for changes in the ruling disallowing Proof of Claim #25. Essentially, PDPM seeks to reargue the same arguments that it previously made and asserts that the court was erroneous in its ruling. This ruling declines the invitation, but it does add supporting reasoning for its original ruling. These are my findings of fact and conclusions of law, and they will not be separately stated. I will enter a separate order confirming the clarifications and denying the PDPM motion.